Ready to proceed on this matter? Good. Mr. Santorelli. Good morning, Your Honors. Frederick Santorelli and with me is Mr. Bruce Kaufman and Timothy Myers. They were counsel for the petitioner Madeline Apollo. Your Honor, at this time I request permission for three minutes of my time to reserve for rebuttal. Yes, of course. Before we begin, am I correct there's still an outstanding claim, the equal protection claim? Yes, there is. Okay, so we have no final order in this matter. That's correct. Okay, which is why you're on mandamus. That's correct. Your Honor, as you just mentioned, we are here on a petition for mandamus to disqualify the trial court judge, the Honorable Patrice Tucker, in this case. The underlying case is a constitutional tort and civil rights case raising matters of great public importance, including corruption and misconduct at the Pennsylvania Convention Center, which is the single largest project in the history of the Commonwealth of Pennsylvania. Mr. Santorelli, my question is, I guess, a largely factual one, but it would help me if you could clarify, to the extent the record describes it, the relationship between the Convention Center and the Avenue of the Arts. Certainly, Your Honor. The relationship is one that's unique, perhaps one that is stronger than any other business has with the Avenue of the Arts. The Convention Center is an entity who has a specifically designated representative on the board of directors of the Avenue of the Arts. Do others have a designated representative? No, Your Honor. As a matter of fact, Ms. Apollo was that representative of the Convention Center before she was fired at the instigation of the CEO, whom she blew the whistle on, which this case arises out of. After that occurred, the Convention Center executive director, this is in the record, the executive director of the Avenue of the Arts telephoned the defendant in this case, Amina Young, and asked her to designate another representative from the Convention Center. So to answer your question, Judge Smith, this is a very close relationship where it's not merely the fact that the Avenue of the Arts advocates for businesses on North Broad Street. Number one, this is the biggest business on North Broad Street, the Convention Center. But number two, this Avenue of the Arts board has a specific representative, and that's the words that they use, and that's important. To represent what? To represent the interests of the Convention Center, especially the Convention Center. Now, Judge Tucker writes to us that the relationship is too remote to cause any concerns about impartiality. The mission of AAI is not to promote any business, let alone the Convention Center. Isn't that entitled to some deference? It's contrary to the facts, the undisputed facts, by the way, Your Honor. I mean, these are documented facts in the record, and these are not mere acquaintances. AAI is a nonprofit corporation, is that correct? That's correct, Your Honor. And as a nonprofit corporation, members of that board have a fiduciary duty to the corporate entity, is that right? That's correct, Your Honor. So how much of your argument is dependent upon the fiduciary duty and those specific elements of a fiduciary duty that one must meet? To equip themselves. It's a strong point that favors our argument, and we do rely on that. Now, the Avenue of the Arts has a fiduciary duty to sustain... The board members have a fiduciary duty. The board members have a fiduciary duty. To the Avenue of the Arts Corporation. That's correct, Your Honor. And part of the duties of these board members is to solicit funds, is to go out and promote other board members. A judge cannot, by ethical restriction, solicit funds. That is true, Your Honor. And there's no allegation that she did. Well, there is evidence in the record that she is on the operating committee whose express mission is to generate strategies for soliciting funds. Now, I agree. I don't have evidence in the record that Judge Tucker was telephoning people to say, Now, we do know in Exhibit A to our reply brief, which I submit is perhaps the most important document that Your Honors should review, it's the December 14, 2011, email from the Executive Director of the Convention Center to the Corporate Governance Committee, Mr. Blum and Ms. Rauchow, two attorneys. That email expressly references the fact that the Convention Center has made a board contribution. It's the same email in which the Executive Director expressly states that Judge Tucker had approached her, confidentially, I might add. And that's an important point. Well, that's a different issue, but, I mean, is this case going to turn on the fact that she was a member of a committee that was strategizing on fundraising? There's no allegation that she did any fundraising? No, Your Honor. Okay. And I was responding to Judge Smith on that. But I just wanted to point out, there is, that's one of many, many issues in the case, that when you look at 455A, the Supreme Court is telling us, look at all the circumstances here. And what would the reasonable person, an objective person in the public, not necessarily judges or lawyers who deal with this every day, but people in the public, what would they say? Are they asking questions? And when we look at this email, the Exhibit A of the reply brief, it's indisputable. People were absolutely declaring their perceptions that there is a problem. People or the writer of that email? The writer of this email. Is that the quintessential reasonable person for 455A purposes? I would submit that it's his best example here. It's somebody with an interest here, isn't it? She does have an interest in the Avenue of the Arts, that's for sure. But that also means she is informed of the facts. But isn't it an objective? I'm sorry, finish. I didn't mean to cut you off. Sure. She is a person who is informed of the facts. And if other reasonable people in the public are informed of the same facts that Ms. Lewis was informed of and that the other members of the Avenue of the Arts Board were informed of, I would respectfully submit that Exhibit A tells you what questions they're asking. And they're certainly saying, is there a problem? She uses the word problem. And she also states that this may be awkward for Judge Tucker to sit on this board while she's presiding over the case. So for purposes of 455A analysis, isn't what's important here the fact that a reasonable person with knowledge of all of the relevant facts would, in the universe of those facts, have that email, which reflects a concern on the part of really an insider to the transaction, expressing concern about the relationship of a member of the board as a judge to some litigation involving the Convention Center? Well, have the facts in the email. And the facts in the email is an expression of what the reasonable person, Ms. Lewis, and the other board members know. And what about the impact, even though solicitation by Judge Tucker is not an issue here, what about the impact of the FYI that appears toward the end of that email? That's a further demonstration that the people who know the facts, they know that the Convention Center contributes money to the Avenue of the Arts. They know that the Convention Center is a defendant in the case Judge Tucker is presiding over. They know that Amina Young has also designated their representative, Ms. Carol Hunt, a key witness in the case, mind you, also sits on the board of that Convention Center. So the fact that the same people who know all the facts here, they also are mindful of the fact that the Convention Center contributes funding to the Avenue of the Arts to help Judge Tucker, to help Madeline Apollo, to help Carol Hunt, to help Mitchell and Titus's managing partner, all of whom are witnesses. What's the effect of Judge Tucker taking a leave of absence? Does that kind of take her out of play? I understand your point of, well, if you go online, you still see her name. Sure. I think it makes things worse, Your Honor, because now the public sees that Judge Tucker has taken a leave of absence. And by the way, we had no idea that she took a leave of absence. My client had no idea. I don't believe the defendants even knew. They didn't mention it in her brief. We know it by virtue of the judge's submission. Does it appear anywhere else in the record we have in this case? No, it does not. Nor was it known to anyone. And it's something, quite frankly, that I would have hoped that if it was important to Judge Tucker, and it clearly is. She says it's important to her. But if it was important, why weren't we told about it? Why weren't we given an opportunity to at least consider it? But the fact is Judge Tucker's letter states that it is important. Why is it important? It's important to this case. It's important to the issue of recusal. And that's what she's telling us. Are you asking us to infer from her leave of absence that Judge Tucker took that leave of absence because Apollo would not resign from the board? Or take a leave of absence. Or take a leave of absence herself. Your Honor, that's an inference that I make. And I can't tell you. I'm not inside. You're asking us to drive? I think it's a reasonable inference you could make. Absent anything else in the record. Now, we don't have anything. I can't get inside Judge Tucker's mind. And I'm not even trying to. And I don't think we have to. These facts are important. But in the end, the test is an objective one, is it not? That's correct. A reasonable person. And that test is, every circuit is adopted. The United States Supreme Court has told us. I don't think there's a dispute on the test itself. Our case law is clear. It is clear. There are virtually the majority of circuits have said, even in close calls, the judge should err on the side of recusal. Now, I don't believe this court has actually used that language, but we cite in our brief many circuits who say that. And that's because when 455A was amended in 1974, Congress, as the Supreme Court has acknowledged, changed the law. Well, Lilschberg uses language of a judge's knowledge of facts. It says it's simply the appearance of a judge's knowledge of facts that would give her an interest in the litigation. So really, knowledge of facts almost is equivalent to interest here. So if there's an appearance that she knows something that seems to be, knows something material to the litigation, that seems to be enough. Would you agree with that? That certainly is. If she knows it. What would that appearance be here? Well, first of all, let me say that appearance. Appearance of what knowledge of facts here? That appearance isn't necessary. The appearance to know facts, that may be a 455B. That may be subsection 1, where the judge has personal knowledge of facts. And you're relying only on A. We're relying on A. But, again, as this case proceeds, we don't know what facts she'll know. She'll certainly have developed credibility and perhaps judgments about the witnesses in the case. She sits with them on the board. Well, there's a lot of case law that says that just familiarity with witnesses should not bring a judge to recuse herself from a situation like this. But what is her interest? I'm trying to figure that out. She sits on a non-profit board. You're saying that it's because she has a fiduciary interest. I'm sorry, because she has a fiduciary duty as a member of the board and because the board receives funds from the convention center. Yes. This is her interest? This is what should disqualify her in the case? Well, that and what she has done, she has expressed to that board the fact confidentially that she understands this is an important business, Your Honor. She understands the interest of judging is very important. I agree with that, and that's why she went confidentially to the board members and told them this. Now, what's more important is how people react to it. The email, Exhibit A to our reply brief, answers the question of how the reasonable persons are reacting to her interest as a board member. And that's what we have to focus on. How are people reacting to her interest as a board member? Not necessarily does she have a financial interest, does she have a familiar interest. That's 455B primarily. The Supreme Court has told us that's not necessarily the inquiry under 455B. Good. We understand that. What about the fact that we're here on mandamus, which is just in order to be granting the writ, you've got to have an indisputable right. Why not just wait for the case to be over? Recusal is a matter that's usually handled on direct appeal. It's a merits issue. Why should we decide this now? Your Honor, I think this Court's case law and the case law of virtually every circuit has stated that mandamus is the appropriate remedy for deciding recusals. When recusals are heard on appeal, it's after a fact, and the damage has already been done. I submit that the damage is being done already here as well. We can't wait any longer. We've received a decision on a motion to dismiss that, as defense counsel has raised, dismisses virtually the entire case, and this is important, without leave to amend, without oral argument, without any discovery, and states it's with prejudice. This Court has stated. Well, that's a merits decision that may or may not be reviewed on appeal. I mean, is that issue before us? It's before you to the extent the public now sees it. They see that Judge Tucker has disregarded what I submit is this Court's law that says when you dismiss claims, you don't do them with prejudice. The Borelli case since 1976 and many cases after that. But we don't handle those issues on mandamus. We handle them on direct appeal. That's correct, Your Honor. But I'm responding to your question. Are you saying that evidence is biased? The fact that it was dismissed with prejudice? It's starting to, Your Honor. Now, at the time we filed this petition, at that point in time, and we do not take this lightly, at the time we filed the motion, we didn't have that. We filed this motion before any decisions were made, any rulings. There's no judge shopping here. But at this point, every time Judge Tucker decides a case, people on the Board of Directors of AI, people who know about this case, people who are informed of the facts are going to be asking the question, I wonder if it's because she has the interest in the convention center as a fiduciary duty to the AI. Now, you disputed what Judge Tucker said. One of the cases you cited in your paper is easily from the Sixth Circuit, remanded for fact-finding by a second judge. Is that something that you'd want? Your Honor, I submit the case is clear. But obviously, if Your Honor thinks that's an appropriate remedy, of course. But I don't think that's necessary. Under this case, when you look at Exhibit A, I think it answers all of our questions. This is reasonable people declaring their perceptions. The Supreme Court has told us, look at the perceptions of the reasonable, informed person. You don't get any more reasonable or informed than the Board of the AI, who know all the facts, who are reacting. Their actions speak louder than any words. Their actions speak louder than the silence that we have from Judge Tucker as to what's in her mind. Their actions are the public perceptions of reasonable, informed persons who expressly state that this is, and again, I highlight this because it's important. The fact that Judge Tucker confidentially mentioned to her, that's important. Why is it confidential? If it wasn't a problem, it should be said in open court anywhere. It wasn't even brought to the attention of the counsel in the case, but it was said confidentially. Let me ask my colleagues if they have any other questions. Thank you very much, Mr. Santorelli. We'll bring you back on rebuttal. Thank you. Ms. Short. Your Honors, good morning. Counsel, may it please the court. My name is Carolyn Short, and I'm with the law firm of Reed Smith, and I represent the Pennsylvania Convention Center as the respondent in this matter. I listened to counsel's argument before the court, and I am somewhat flabbergasted that there can be such a woefully inadequate record on perception by the reasonable man that this judge could in any way show an appearance of bias. Counsel just said to Your Honor that we didn't start this case out as claiming that it was a bias case under B. Well, in fact, they did. If you read the motion to recuse the Judge Tucker, it was on an actual bias basis. And then when we walked into the courtroom that day, Mr. Santorelli withdrew those claims and turned it into a perception case, A. And why should that matter for purposes of today? Well, I think it matters in the disingenuousness of this argument. And the reason why I say that, and I would not ordinarily do so, but if the court looks closely at this record, it is this record has been, counsel has manipulated for some reason by filing a motion to recuse on, let's say it's on a perception ground. The complaint was filed in October of 2011. So we know for sure Petitioner knew that Judge Tucker was serving on the board of the AAI at that point, correct? There is no motion to recuse filed until I believe it was, and let me see my notes. But there is both a motion to recuse and a subsequent motion for consideration filed before the ruling on the dispositive motion. That is correct. So that's an answer. No, no, excuse me. That is not correct. No, absolutely not. As a matter of fact. Not two petitions before the ruling? The ruling on the dispositive motion to dismiss came before the mandamus petition. By motion to recuse. Motion to recuse and a motion for reconsideration. I'm sorry, Your Honor. Yes, that is correct. Let me ask you this. Is Petitioner accurate, not factually here, but in their characterization of the situation, and that is they say this at page four of the petition. That the situation here is a judge sitting on the board of an organization that expressly promotes a defendant in a case in which she presides. Is that an accurate characterization? No, it's not. All right. Because that organization does not expressly promote the PCCA. Go to its website, because that's a matter of public record. Look at what Judge Tucker said. It is an organization that promotes business, tourism, and entertainment in the city of Philadelphia. If you were to take that argument to its logical conclusion, then Judge Tucker would not be able to sit on any cases that involved any businesses, tourism, or entertainment in the city of Philadelphia. This is a little different. Doesn't the convention center have a trustee on that board? The convention center has a trustee on that board. Everybody else does, right? The ballet has a trustee on that board. And the fact of the matter is that the record is not complete on that issue. I actually do not know what other people, what other entities have people on that board. And I also think that the record does not say that the convention center has a designated person on the board. There happens to be a representative from the convention center, which would make, just from our ordinary knowledge, perfect sense, because it, too, they perhaps have a shared mission that they both want to promote business and tourism in the city in order to fill up the convention center. The convention center has that mission. But it doesn't mean that they are so wholly intertwined that the missions are one. The Avenue of the Arts has the mission of promoting all of the businesses, all of the centers for entertainment and industry in the city of Philadelphia. The convention center is one. Is it a big one? So are you suggesting, and I agree that there are matters here that I've certainly inquired into that are not explicit in the record as we have it, and that's why I began my questioning of your adversary with a question about the relationship between the two entities. Are you suggesting by one of your earlier statements that there is not anything that requires that a representative of the convention center be on the board of the Avenue of the Arts? Are you stating that to me? Not that I'm aware of. And, you know, I would think that during the course of this matter that I would have learned that, and I have not. I'm sorry to say I don't have that actual fact for you, and correct me if I am wrong on that. But, you know, I am aware of nothing that requires that. I know that it is a practice, and I know that it is a practice that many business leaders and members of business organizations are on that board. Just like members of the court are on other arts boards, and members of this court are on other arts boards. This is something that Judge Tucker should do without jeopardizing her duty to sit on cases, which she has that duty not to recuse herself, and we haven't been considering that yet. And, in fact, the cases do state and speak in terms of a duty to sit primarily. Yes. So that is a backdrop against any ultimate duty made to recuse. And also, the cases that say that a judge should recuse herself or himself when there is a quote, unquote, appearance of impropriety, I mean, the cases that there is not a single case cited by petitioner in this matter that said simply by serving on a board without any personal interest, without any financial interest, without any alleged personal relationships. There is not even any allegation that Judge Tucker has ever had any relationship with any of these individuals that sit on the board, other than one allegation, I think, in the original motion that says that Judge Tucker looked at Madeleine Apollo at a board meeting. Well, it's not quite that simple, though, is it? I mean, they share fiduciary relationships, right? They each have a- Madeleine Apollo and the judge. Yes, a fiduciary relationship that is coextensive with the other. Sure, but shouldn't, I mean, wouldn't that argue, I mean, as I've thought about this over time, wouldn't that argue that the convention center might have a motion to recuse? But no, the fact is- Stay on that question. And it's a reasonable person's perception. Stay on that question. What if, or is it possible that there could be reasonable people out there who would look at that relationship and say it's problematic, and reasonable people who would look at the other relationship and say it's problematic? Does that help you? Well- The mere fact that- No, it doesn't. There are a lot of people questioning- I would disagree with Your Honor under the law on that. There might be reasonable people that would look at it and think that, but not the reasonable man standard under the law, which is the reasonable person who is aware of all of the facts under this, including what Judge Tucker said in her letter submission to this court. So the reasonable person knowing that there's no allegation that there's any relationship between any of the parties, that they happen to share fiduciary, both the convention center and Madeline Apollo and the judge, and alleged witnesses. I don't agree with the characterization of key witnesses, obviously, regardless of that fact. That simply because they all share fiduciary duties to the AAI, the Avenue of the Arts, Inc., that that somehow, just by virtue of that, there's no personal financial gain, there's no evidence of any kind of understanding of the knowledge of this particular case by the judge, and all of the cases that mandate recusal that I have read in preparation for this argument, say there has to be something more than mere acquaintance. There's the case out of New Jersey where the court officers- You haven't spoken to the e-mail. You haven't spoken to the e-mail from the executive director. Let me talk about the e-mail, because I did bring that up since you were talking about that. First of all, let's ask what it is that Judge Tucker did. Clearly on the facts, not what counsel says that Judge Tucker did. On the stipulated facts and on what Judge Tucker said she did. She went after the board meeting on December 13, 2011, to the executive director, not to anyone else, not to any other board members. And you have to think about this action in light of what had gone on where counsel had filed a complaint alleging basically criminal misconduct and conspiracy among the convention center, Amina Young, and non-party lawyers, et cetera. So that's in the newspaper. So Judge Tucker on that day of the board meeting goes up to the executive director as any ordinary board member and any board member who cares about their organization would go to the executive director and say, hey, heads up. Just I want you to know that I am the presiding judge on this matter in which Madeline Apollo has sued the convention center, period. Nothing about where counsel in his papers throughout says she said it was awkward. The witness that was in the courtroom that day and the stipulated facts, she didn't testify but we stipulated to the facts and counsel interviewed her. There was no statement of any it was awkward. It was pure and simple heads up. Because why? It makes perfect sense. This is an organization in which the executive director needs to know what's going on in case there's any adverse publicity. So she does nothing wrong. She just says, hey, this is what no knowledge of the case. She doesn't suggest. Okay, so the email after that. This is not Judge Tucker's action, and this also, this is not the reasonable person. This email, and for the record, I'm referring to the email which is Exhibit A to the petition. This email is written by Karen Lewis, the executive director, saying exactly basically what Judge Tucker said. Judge Tucker confidentially mentioned to me after the board meeting that she has been assigned Madeline Apollo's case. She is suing the convention center. And then it talks about the history of keeping Madeline on. Now, FYI, we received a board contribution from PA Convention Center. What does that mean? I think that that means this doesn't have anything to do with what Judge Tucker said or any perception. What does could this pose a problem for us mean? No, I completely disagree. No, that was a question, Ms. Short. Oh, I'm sorry, not a statement. No, I. What does it mean? What would the reasonable person out there make of that inquiry? The reasonable person knowing all the facts in this case would think that the executive director wanted to make sure that her board was aware of all the circumstances. Don't you think that if this was a $100,000 contribution or a million-dollar contribution or some significant contribution that we would be sitting here right now with that evidence before this court? We don't know. I don't know, and this court certainly doesn't know, where it says, we have received a board contribution from the PA Convention Center. What does that mean, a board contribution? Does that mean an individual board member on the AAI who also works for the convention center gave a personal donation? I don't know. Does it mean that the convention center gave a donation with its government funds to the AAI? I don't know. Does the record show the funding of the AAI? I assume that there's public money and probably donations from other arts organizations and private funds as well. Sure. Am I correct? That's how it runs its budget. You see on its website that it is run through both government funding and private fundraising. The fact that there is something in a private email that is not a matter of publicity, this is a private board matter. It says, you should know all of the facts. This is the kind of thing that executive directors talk to board members about all the time. Does this reflect on what the reasonable person, knowing all the facts and circumstances under this case, would look at and have some kind of doubt as to this judge's ability to fairly judge the case? Absolutely not. Judge Tucker didn't say, and by the way, I'm concerned because the convention center gave a donation. What are we to make of the fact that she took a leave of absence? Does that make any difference? Well, you know, I was interested to hear counsel say, you know, it would have been nice for us to have known, but he did know before he filed this mandamus petition. But what should we make of it? What should you make of it? I think that we can make nothing of it because we have absolutely no idea why she took a leave of absence. It could be for health reasons. It could be for family reasons. It could be for scheduling reasons. It could be for any reason whatsoever. And it is more likely than not something other than the Madeline Apollo case that is quite, you know, sort of centrally focused on oneself to think that a judge's actions would involve something like that. Assuming that no improper motive is ascribed to her taking a leave of absence, does the fact that she's on leave of absence change the analysis here as opposed to her being an active member of the board? I really actually don't think so because I don't think being an active member of this board has any bearing on the reasonable person's perception under the case law. And the courts have been, even though this circuit has not clearly stated that when, you know, this narrow area, which is when a judge sits on the board with a party and potentially other witnesses, that that is not an area that requires recusal. This court has not clearly said that narrow thing. Do we even know on this record what a leave of absence means in this context? I visited the website over the weekend, and Judge Tucker is still shown as a member of the board. There's no notation that I was able to see that said anything about a leave of absence. But whether it designates her as that or not, I mean, is there some status of leave of absence or active members of the board? I'm not quite sure what to make of it. Well, I wondered the same question myself last night, and I went on the website and looked at the minutes of a meeting which said next to Judge Tucker's name, leave of absence. So I saw that on the website. It did not say it on the banner page, but it did say it on minutes of a meeting. You don't know why or how long? No. But I don't, I really, I do not think under the case law that that is pivotal. Because I think that to say that simply because, and it is, right, because since we are here on appearance, it can only be the two things that counsel has raised, that is that they share the same fiduciary duty and sit on the board together, and that this comment was made that I sit on the case. Those are the two, they're simple facts. There can be, you know, no other question. Is that sufficient to require a judge to recuse herself when she has not, she's no personal or financial interest? Under the case law, no. On the other hand, there are cases that talk about how this mandamus petition cannot be used blatantly for litigation tactics. And I would suggest to this court that you look at the timeline in this case and see what has happened over the course of this litigation from the time the complaint was filed and then we filed our motion to dismiss. And then by the time the plaintiffs were required to respond to that motion to dismiss on that very day, they filed a complaint alleging that Reed Smith was somehow involved in this conspiracy and that I personally, and a fourth-year lawyer in our law firm, was a criminal conspirator in this case. And then when we filed our next motion to dismiss, they then filed a motion to disqualify Reed Smith because of those very reasons. It was a cut-and-paste job. And then after that, when the judge, it was pending, they escalated these litigation tactics, no holds barred, by going after the judge in a motion to recuse for what reason? Because she sat on the board? If this court is looking to police some action, might I suggest that it is the action of this law firm and not this judge who has done everything right in this litigation? We don't care what judge we get on the district court. But we cannot tolerate, as a system, allowing a law firm to come in and brutalize the parties, the litigants, and the judge, and let it go as perhaps some interesting and academic legal question. What is the status of the case right now? The case is here. No, no, before the trial court. There is one claim remaining, this equal protection claim. There has been no scheduling conference yet. So the status of the case is that the judge has ruled on our motion to dismiss. And by the way, it should also be noted that after she ruled on the motion to dismiss, more than a month later, counsel filed this petition for mandamus before this court. And this issue of sitting on the board existed on the day the complaint was filed in October. So where is it? We have had significant work on this case. We've filed two motions to dismiss. We've filed responses to the motion to disqualify Reed Smith. The judge has ruled on and obviously become familiar with the legal issues regarding the motion to dismiss  So we are not at what one would call an early stage of this proceeding. My clients have expended a considerable, some, and the judge has expended considerable judicial resources on this matter. So this is not, and by the way, the law is not, well, it's, you know, who cares really because it's at an early stage of the proceeding, so the judge may as well recuse herself. But that's really not what we should be considering here. And it is neither an early stage nor is that, in my mind, respectfully, Your Honor, an appropriate way to look at this case because of the, you know, the no holds barred litigation strategy of judge shopping and scorched earth litigation that has been used in this case. Good. Any other questions?  Thank you very much, Ms. Short. Thank you, Your Honor. Mr. Santorelli. Your Honors, in listening to my adversary's argument, it makes me wonder why is she fighting so hard to keep Judge Tucker in this case to the point where she's actually accused me of lying to you. She said that I knew Judge Tucker took a leave of absence before we filed the petition for mandamus, and I challenge her, if they're making that representation, to prove that. To give any indication of that. That is an outright lie. We did not know. Judge? I would like to speak for myself. I don't pretend to speak for the panel. But these are allegations, frankly, that I find very distasteful, professionally and personally. I recall an instance in trial when I heard counsel call another counsel a liar, and we had a very unpleasant sidebar. So it's a word I, speaking for myself, Judge Sirica, I would prefer not hearing from counsel. I agree, Your Honor. But I just want to point out that what was stated is not accurate whatsoever. We did not know. Why didn't we know? No one told us. Judge Tucker never told us. And in terms of whether or not when we filed this motion for recusal, 455A in the case law states that judges are encouraged to do this sua sponte. We don't take this lightly. We're not going to go run in there and file a motion for recusal until Judge Tucker has an opportunity to review the matter. Now, the case is in its infant stages at this point in time in terms of the amount of involvement of the district court. Nothing has happened other than the motion to dismiss has been moved. Well, most of the claims have been thrown out without leave to amend, so there's not much left. That's what I'm told. It's virtually the entire case has been gutted, which is problematic. But in terms of the investment of time and resources by the court, other than the motion to dismiss, there really hasn't been anything. We filed this with the express statement that we are doing it before there has been a substantive ruling, and we made that clear. And we only did it after my client was requested to step down from the board based upon the conversation that Judge Tucker had with the board members. It set off a triggering, it triggered a set of events that resulted in board meetings, board conference calls, further discussion about this problem, about the awkwardness. And these are words of a reasonable person who knows the facts. We understand. But, you know, your side has litigated this pretty heavily, too. I mean, to move against the attorneys is not a usual way to proceed in these matters. The attorneys in this case that are representing the convention center and Ms. Young were involved in the facts of the case that led up to my client being fired. There's no doubt about that. It's expressly pled in the complaint. And it's been stated in the press. I understand that. And attorneys give advice to their clients. Well, in this case, the underlying human resources litigation, which my client was fired because she did not fire one of the people, that investigation was done by counsel in the case. But in any event, Your Honor, I agree, we do digress on that. I'm only responding to what my adversary chose to make an issue in this case before this court. The fact that there's a designated representative on the board, Your Honor requests, is there any evidence of that? First of all, Judge Tucker states it in her opinion. I believe it's on page four. She actually acknowledges the fact that it is a designated representative of the convention center on the board. Obviously it's designated. My query really was whether or not it was formalized somehow in the relationship between the two entities. I may not have been specific enough in how I phrased my question. Okay. I don't have the board minutes, but clearly as a matter of practice, and in our attachments to the petition, we do have a report of Karen Lewis where she states that she actually contacted Amina Young of the convention center to have the convention center designated and appointed to the board. Are there other entities represented on the AAAD board? Not like that. No. Of course there are business people on the board, but no one has a designated. I know, but from the businesses that they're promoting. Oh, sure. Sure, they're on there. There are others. And the orchestra and the ballet, are they, they have representatives? Well, they're not designated representatives, but people who want to be on the board can join. And usually the business people in that area, they do join the board. Now, none of them have a specially designated member on the board, like the convention center. That's what makes it unique. That's what makes this whole case unique. And the fact that Judge Tucker's relationship on this board, it's not as if she'd have to recuse herself for every other business that This is a special relationship. And that's why Exhibit A of the reply brief, that email, that's why these people are talking that way, because they know there could be a problem here. No one asks if there's a problem, if it's just a board situation. This is a court situation. The oath to the court system comes first. If anyone's going to decide, do I step down from the board or do I step down from the case? It's the perception of the public in the court system that counts. My adversary says, well, it's the normal thing that someone would do to a board. You would go and tell your board, oh, I happen to have this conflict. I submit to you, this is serious business, much more serious than that. This is judging. The business of judging is the most important thing when it comes to a judge sitting on the board. That takes precedence. You cannot bring the courtroom into the boardroom. That's essentially what happened here. Judge Tucker went confidentially to Ms. Lewis to tell her that. Why confidentially? As I said earlier, because it's important. Everyone recognizes it's important. Why are people asking if there's a problem? Because it's important. They wouldn't ask if it's a problem if just some other board member did it or raised this issue. Your Honor, I submit that the... You can finish up. The case law, I think we all agree with the case law. The Supreme Court has set it down. The circuits have said that if there's close calls, they're on the side of recusal. Well, we have not said that. We have not said that. I agree. The majority of circuits have. And in this case, Exhibit A answers the question that the Supreme Court once answered. What's the public perception? Good. Thank you, Your Honor. Thank you very much. We thank counsel for a very helpful argument.